AO 472  (Rev. 12/03)  Order of Detention Pending Trial

# UNITED STATES DISTRICT COURT

| EASTERN | District of | MICHIGAN |
|---|---|---|

UNITED STATES OF AMERICA

**V.**

RAY AMERSON
*Defendant*

**ORDER OF DETENTION PENDING TRIAL**

Case  05-80617-11

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I conclude that the following facts require the detention of the defendant pending trial in this case.

**Part I—Findings of Fact**

☐ (1) The defendant is charged with an offense described in 18 U.S.C. § 3142(f)(1) and has been   ☐ federal   ☐ stat or local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had   that is
  ☐ a crime of violence as defined in 18 U.S.C. § 3156(a)(4).
  ☐ an offense for which the maximum sentence is life imprisonment or death.
  ☐ an offense for which a maximum term of imprisonment of ten years or more is _____.*
  ☐ a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 § 3142(f)(1)(A)-©, or comparable state or local offenses.

☐ (2) The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local
☐ (3) A period of not more than five years has elapsed since ☐ date of conviction ☐ release of the defendant from imprisonment for the offense described in finding (1).
☐ (4) Findings Nos. (1), (2) and (3) establish a rebuttable presumption that no condition or combination of conditions will reasonably safety of (an) other person(s) and the community. I further find that the defendant has not rebutted this presumption.

**Alternative Findings (A)**

☑ (1) There is probable cause to believe that the defendant has committed an offense
  ☑ for which a maximum term of imprisonment of ten years or more is   the Controlled Substances Act  .

☑ (2) The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will the appearance of the defendant as required and the safety of the community.

**Alternative Findings (B)**

☑ (1) There is a serious risk that the defendant will not appear.
☐ (2) There is a serious risk that the defendant will endanger the safety of another person or the community.
See three page attachment below

**Part II—Written Statement of Reasons for Detention**

I find that the credible testimony and information submitted at the hearing   ☐ clear and convincing   ☑ a preponderance of the evidence  that
no condition or combination fo conditions will reasonably assure the appearance of the defendants

**Part III—Directions Regarding Detention**

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

| August 01, 2005 | s/Steven D. Pepe |
|---|---|
| Date | *Signature of Judge* |
|  | Steven D. Pepe, United States Magistrate Judge |
|  | *Name and Title of Judge* |

*Insert as applicable: (a) Controlled Substances Act (21 U.S.C. § 801 *et seq.*); (b) Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*); or © Section 1 of Act of Sept. 15, 1980 (21 U.S.C. § 955a).

Defendant Ray Amerson is involved with 23 other defendants on an indictment charging him with Conspiracy to Distribute and Distribution of Controlled Substances in violation of 21 U.S.C. § 846 and § 841(a)(1) (Count One); Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(a)(1)(a)(i) and § 1956(h ) (Count Three), and two Counts of Use of a Telephone to Facilitate a Drug Conspiracy in violation of 21 U.S.C. § 843(b) (Counts 19 & 23).  In total, approximately $13,000,000.00 in cash and 8,000 pounds of marijuana have been seized during this investigation since it began in March 2004. Title III wiretaps in the last 10 months provide much of the evidence of this widespread drug conspiracy  The government proffered that the alleged king pin of this operation, Quasand Lewis (D-1) in February 2004 alone received 17,000 pounds of marijuana with an approximate wholesale value of $14 million and retail value of as much as $ 17 million.

Defendant Dafney is a 31 year old father of two who apparently live with their mother.  He lives with his girlfriend and her child for the last six months.  Prior to that he reports living with his mother for several months and a various other addressed in Detroit for short periods.  While born and raised in Detroit, he moved to Charlotte, NC in 1997 with his ex-wife after serving five years in prison.

Defendant pled guilty to Possession of Cocaine, less than 25 grams, and carrying a Concealed Weapon in May 1991 and received a 1-5 sentence which he "maxed out" on March 20, 1996, not getting parole.

He was found guilty of felony Possession with Intent to Deliver Cocaine in Charlotte, NC, in June 1997, and was sentenced to 5-6 months custody and 24 months probation.

His probation was violated and revoked when he was arrested, and later pled guilty to, felony Trafficking in Cocaine on February 24, 1998, which was very near his release date on the June 1997 drug charge.  He was sentenced to 35-42 months and released on July 3, 2001 without parole term noted.

After returning to Detroit, he was found guilty of an April 24, 2003, charge of Delivery/Manufacture Marijuana and sentenced to 5 months in jail on
August 20, 2003.  There is also a misdemeanor Attempted Dangerous Drugs from September 24, 2003, for which the disposition is not known.

Despite defendant's extensive criminal drug activity for a 31 year old, he never failed to appear except on two traffic matters in North Caroline in 1997 and 1998  when he was in custody on the cocaine trafficking charges.

Defendant is unemployed since 1997 but works with his brother mowing lawns and he also does odd jobs.  He has two vehicles and he has several thousand dollars in debt, although he has retained counsel.

He is in good health, has no history of mental health problems or substance abuse.  His urinalyses was negative.

Evidence presented at the detention hearing by proffer, with the agreement of defense counsel, shows that defendant Amerson runs a stash house for co-defendant Saeeda Walker (D-6) whom the indictment notes is a "high level manager and leader of section of the organization". (Indictment p.6)  Wiretap evidence of March 6, 2005, has defendant Amerson, while driving around, telling Saeeda Walker, who was with co-defendant  Quasand Lewis (D-1), that he had observed surveillance of the stash house by several white officers when Quasand Lewis had been there earlier. He tells Walker to tell Lewis "Tell dude, just like how they came when we was down south.  When we was down there at Los...Los Angeles."  The government believes this refers to   Amerson's early involvement in the conspiracy in 1997 when Amerson,  Lewis and others traveled to Los Angeles California with $484,000 cash to attempt to purchase kilogram quantities of cocaine.  The purchase did not go through – apparently because they saw surveillance then also – but the police seized the $484,000 cash.   Amerson is connected to that incident by virtue of credit card receipts in his name seized in Los Angeles as well as this March 2005 intercept referring to it. This 1997 involvement

appears to have been while defendant Amerson was serving his 24 months probation on in Charlotte, N.C., cocaine case.

Defendant did not try to flee after this March 6, 2005, surveillance, and he surrender on the current indictment, instead of fleeing.

The government asserts that defendant's Trafficking in Cocaine charges from February 24, 1998, was also related to this conspiracy (Indictment at p. 8). Defendant's stash house ("number two") was robbed on February 18, 2005. According to a intercepted call, he advised Quasand Lewis through Saeeda Walker of the robbery. (Call 765, February 18, 2005). After Walker said "Ain't nothin' in there, is it?" Defendant Amerson claims that the thieves stole money, "I had like three! And my little sixteen, they kicked the back door in." The government interpreted this 3 and 16 as referring to $19,000. An " AK" (AK 47 firearm) was also missing from "his" house and Amerson thinks they probably took it also. In a later call, it was confirmed another of Walker's houses was not robbed because they did not know about it. Some girl in the neighborhood saw a black truck and individuals in masks. Saeeda Walker indicates that "Damon, Cal and "Ro-RO" were involved. Saeeda Walker suggested that the robbers might have injured defendant had he been there. Another wire intercept indicated that defendant's girl was to bring him a gun.

[Wire intercepts in the Edward Walker detention hearing indicate that Saeeda Walker put a $50,000 price on Damon and Cal for robbing this stash house, but there is no evidence that defendant Amerson was involved in this effort.]

Evidence was presented to suggest that Saeeda Walker turned to defendant, when she wanted to find someone to intimidate a high school athlete who was giving her daughter some problems "tryin' to fight her." Several days later in a call to her daughter, when she learned the student had not been suspended as the Principal has told her, Saeeda Walker noted ". . . if she's not going to suspend him than I'd rather [have] the fellas break his legs. It's up to her we can do this the right way or the wrong way." (Call No 789.)

Defendant first proffered his mother as a third-party custodian. Pretrial Services had been skeptical when first contacting the mother because of her reluctance to give information until trying to confirm what defendant had said to Pretrial. When later interviewed she said defendant's sister, who has a drug problem, no longer lived with her. Defendant, on the other hand, told Pretrial this sister – which was the only sister he identified to Pretrial – did live with his mother. When it was indicated that such discrepancies undercut confidence in the suitability of this custodian or the placement, defense counsel sought to proffer another third party custodian. Initially, he suggested defendant's bother with whom he occasionally worked on lawns. Defendant said he had no record, but defense counsel discovered there was a dated record. He then proffered Gevenetta Denise Craig-Heynes, who identified herself as defendant's sister who had bi-weekly telephone contacts with him. Ms. Craig-Heynes lives with her two children and sister. Defendant could stay in her basement, and she was always home because she was the care-taker of her disabled sister. Defendant did not mention Ms. Craig-Heynes as a sister when interviewed by Pretrial, even though brothers and sisters are asked about. He only identified the sister who he said lived with his mother.

The issue of dangerousness in this case is more easily resolved than that of flight. Defendant had his probation violated in 1997 on his second cocaine charge to which he pled guilty. It appears defendant's failed effort in 1997 with co-defendant Quasand Lewis to purchase cocaine in the Los Angeles area was while he was on probation from his North Carolina cocaine case. While defendant was involved as running a stash house and having other involvements in a large scale drug distribution enterprise, that organization is now defunct in light of 24 defendant indictment and the multiple arrests and detention of the principle players. The proffered third party custodian cannot physically prevent flight, but on her risks of facing a first felony charges, she is not likely to tolerate or acquiesce in any further criminal drug dealing of her "brother", defendant Amerson  This is particularly so now that the defendant is under the close scrutiny of the federal drug enforcement authorities as well a our Pretrial Services. A defendant under house arrest with a third

party custodian who is duty bound to be present on the premises at most times, could not return to a pattern of drug dealing without the criminal acquiescence of the third party custodian even if the former drug distribution network were still in operation, which is not the case here.  Thus, there is not clear and convincing evidence that a strict set of conditions, including virtual house arrest with the third party presence at any out-of-house activity, would not check defendant Amerson's danger to the community pending the trial of this matter, if he stays under her custody and control.

Yet the question of flight must be assessed.  While defendant has appeared at all his multiple felony cases in the past, and he did not try to flee after this March 6, 2005, surveillance, or upon learning about the indictment upon which he surrendered, it is not clear he was then aware of the penalties he currently faces.  The penalty for the count one conspiracy charge is a mandatory minimum term of 10 years up to life imprisonment under 21 U.S.C. Section 841(b)(1)(B) if the government proves that defendant is accountable for over 1000 kilograms of marijuana. 100 kilograms is a mandatory minimum 5 years and up to 40 years. Given the fact that defendant operated one of the stash houses for the organization, and has a very lengthy criminal record related to drugs, his sentence if convicted could easily be at least 20 years. This is four times any of his prior convictions.

There are also millions of dollars in proceeds from this drug conspiracy that are not accounted for and might be made available to defendant to assist in flight.  Defendant appears to have given incomplete information to Pretrial about his relatives. or else his proffered third party custodian is not his sister and she provided misinformation which would make her an unsuitable custodian. Defendant's past drug violations while on probation also cause concern whether any conditions this Court would set to constrain his flight would be followed. He has no substantial economic or employment ties to Detroit, and his mother and girlfriend are insufficient to assure his appearance.